SECOND DIVISION

December 12, 2000

No.  1-99-2808

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY.

)

)

)

TOMMY JACKSON, ) HONORABLE

) EDWARD FIALA,

Defendant-Appellant. ) JUDGE PRESIDING.

)

JUSTICE GORDON delivered the opinion of the court:

Defendant, Tommy Jackson, was charged with and convicted of possession of a controlled substance with intent to deliver for possession of cocaine (720 ILCS 570/401(c)(2) (West 1998)) and heroin (720 ILCS 570/401(d) (West 1998)).  Defendant was sentenced to six years in prison.  On appeal, defendant argues that the State failed to prove him guilty of the charged offenses beyond a reasonable doubt; that the trial judge rendered inconsistent findings of guilty of possession of heroin and not guilty of possession of cocaine; that he was denied effective assistance of counsel and that the circuit court erred in denying his motion to suppress evidence.  We reverse and vacate defendant's convictions.
(footnote: 1)
 At trial, Michael Soto (Soto) was the only witness for the State.  Soto testified that he is a police officer with the Chicago police department.  On September 19
, 1998, he was working with his partner, Officer Michael Egan (Egan), near 1601 South Komensky in the City of Chicago while conducting a surveillance of that area.  At approximately 11:30 in the morning, Soto saw defendant receive money from an unknown person and point to a third man, Jimmy Stidham, who was standing five to ten feet away from defendant, whereupon the unknown man walked over to Stidham and then left the scene.  

Immediately after making the foregoing observation, Soto returned to a nearby alley where the police car, which his partner was driving, was parked.  The officers then drove from the alley back to the scene at 16
th
 and Komensky where defendant and Stidham were still standing.  As the officers pulled over, Stidham dropped a brown paper bag which he was carrying.  Soto recovered the bag and began to pursue Stidham who started to run away.  Soto subsequently detained Stidham while his partner detained defendant.  One of the officers thereupon searched defendant and did not find any narcotics but did find $150 in cash on defendant's person.  The officers also examined at the scene the brown paper bag which, according to Soto's testimony, contained 29 packets suspected to contain crack cocaine and 24 packets suspected to contain heroin.

On cross-examination defense counsel elicited for the first time from Soto that he observed Stidham reach into the brown paper bag and transfer an object from that bag to the unknown person.  The specific colloquy of that cross-examination is set forth later in this opinion.  On re-direct examination the State further pursued those facts.  This colloquy is also set out later in this opinion.

The parties then stipulated to the chain of custody of the contents of the paper bag and to the chemical composition of the substance in the packets.  The substances were cocaine and heroin, as the officers suspected.  The State then rested its case-in-chief and defendant moved for a finding of not guilty, which was denied.  Counsel for defendant proceeded to call several witnesses, none of whose testimony is relevant to this appeal.  Defendant was subsequently convicted on both counts and sentenced to six years in prison.
(footnote: 2)  This appeal followed.

Defendant first argues that he was not proven guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver.  We agree.

Defendant in this case was convicted of possession of a controlled substance with intent to deliver pursuant to sections 401(c)(2) and 401(d) of the Illinois Controlled Substances Act  (720 ILCS 570/401(c)(2), 570/401(d)(West 1998), which make it unlawful to possess with intent to deliver cocaine and heroin, respectively.  As it was never alleged that defendant ever had actual, physical possession of the contraband at issue, defendant was convicted on a theory of accountability.  Pursuant to section 5-2(c) of the Criminal Code of 1961 (720 ILCS 5/5-2(c) (West 1998)), a person is legally accountable for the conduct of another person when either "before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense."

In order to convict a defendant on a theory of accountability, the State must establish beyond a reasonable doubt that: "(1) the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the crime;  (2) the defendant's participation took place before or during the commission of the crime, and (3) the defendant had the concurrent intent to promote or facilitate the commission of the crime."  
People v. Carrizales
, 240 Ill. App. 3d 893, 900, 608 N.E.2d 30, 35 (1992).  "There must be proof of the intent to aid, abet or attempt to aid another in the perpetration of the crime."  
Carrizales
, 240 Ill. App. 3d at 901, 608 N.E.2d at 35.  Such proof may be inferred from the circumstances surrounding the crime.  
Carrizales
, 240 Ill. App. 3d at 901, 608 N.E.2d at 35.

In this case, the only link between defendant and the contraband at issue is the alleged transaction with the unknown person.  The testimony did not establish the identity of the item which Stidham was alleged to have handed to the unknown person.  

While cross-examination by defense counsel elicited from the witness the fact that he observed Stidham give the unknown person an object which he retrieved from his bag and while it is true that the remaining contents of the bag were shown to be narcotics, those facts alone are insufficient to establish that the object transferred to the unknown person was contraband.  It is at least theoretically possible that there was something innocuous in the bag which Stidham handed to the unknown person, notwithstanding that the remaining packets in the paper bag contained cocaine and heroin.

While we have not found any cases directly on point, we find 
People v. Tony Jones
, 174 Ill. 2d 427, 429-30, 675 N.E.2d 99, 101 (1996), to be analogous.  In 
Tony Jones
, the defendant was arrested for the possession of five packets containing a white rocky substance which police believed to be cocaine.  The contents of two of the packets tested positive for cocaine; however, the remaining three packets were not tested.  The two tested packets weighed only .59 grams together, while the combined weight of all five packets was 1.4 grams.  The defendant was convicted of possession with intent to deliver 1.4 grams of cocaine.

Our supreme court held
 that the defendant in 
Tony Jones
 could only be convicted of possession with intent to deliver .59 grams of cocaine because the other three packets had not been identified as cocaine and no inference could be drawn that the three packets contained cocaine based on the mere fact that the other two packets did.  The court reasoned that while "it is not difficult to speculate, as did the trial judge, that the remaining three packets may have contained cocaine, such a finding must be based on evidence and not upon guess, speculation or conjecture."  
Tony Jones
, 174 Ill. 2d at 429-30, 675 N.E.2d at 101; see also 
People v. Hill
, 169 Ill. App. 3d 901, 912, 524 N.E.2d 604, 612 (1988); 
People v. Maiden
, 210 Ill. App. 3d 390, 400, 569 N.E.2d 120, 126-27 (1991); 
People v. Games
, 94 Ill. App. 3d 130, 131, 418 N.E.2d 520, 521 (1981).   The court distinguished the case of
 
People v. Kaludis
, 146 Ill. App. 3d 888, 895-96, 497 N.E.2d 360, 365 (1986) (testing of three of 100 tablets sufficient where all the tablets had identical markings, lettering characteristics, beveling and scoring and chemist opined that all of the tablets were made on the same tablet press with the same set of dies), reasoning that such random testing is permissible only "when [as in 
Kaludis
] the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those conclusively tested."  
Tony Jones
, 174 Ill. 2d at 429, 675 N.E.2d at 100.

In the case at bar the only evidence that the object received by the unknown person was contraband is that it came out of a bag which was later found to contain packets of cocaine and heroin and nothing else.  The inference that the unknown object contains narcotics because it came out of a bag containing packets of narcotics is clearly analogous to presuming that because two of five packets in the possession of a defendant contain cocaine, the other three do as well.  Such an inference was expressly prohibited by our supreme court in 
Tony Jones
, and we see no reason why a similar inference should be permitted here.

In addition to the fact that the object purportedly "purchased" was not identified, the evidence presented does not offer sufficient proof that defendant was involved at all in the transaction pertaining to that unidentified object.  Even if the contents of the unknown object were identified as a narcotic, the evidence falls short of establishing defendant's involvement as its vendor.  Since the exchange is predicated only upon the observation of a single transaction, it is more than theoretically possible that the unknown person's involvement with defendant was not connected with the unknown person's subsequent transaction with Stidham.  While defendant did point in Stidham's direction, we do not consider this single observation alone to be sufficient on which to predicate a conviction.  As an isolated occurrence without any conversation, attempting to tie in the pointing to Stidham with the transaction is too speculative.  The unknown person may, for example, have paid a debt to defendant which was unconnected to any subsequent transaction with Stidham.  At least theoretically, the pointing to Stidham could have been in answer to a question asking defendant if he knew where Stidham could be found.  These concerns would have been substantially dissipated and defendant's connection with Stidham's ultimate narcotics transfer more sufficiently established, however, if the police had testified to a pattern of activity wherein more than a single customer approached defendant, gave him money and received an object from Stidham after a nod by defendant in his direction.

Finally, the State relies on 
People v. Larry Jones
, 295 Ill. App. 3d 444, 692 N.E.2d 762 (1998), wherein the defendant's
 conviction on an accountability theory for possession of cocaine with intent to deliver was affirmed.  However, 
Larry Jones
 is inapposite; in fact, it is fully consistent with our conclusions here.  While the facts of 
Larry Jones
 have superficial similarities to this case in that the person taking the money pointed to the person with the cocaine, in 
Larry Jones
 one of the "customers" was apprehended with cocaine on his person.  Additionally, in 
Larry Jones
 two separate transactions following the same pattern were observed.  As previously noted the case at bar, unlike the 
Larry Jones
 case, suffers from two infirmities.  First, the attempt to connect defendant with the transfer of the object by a third person was based on only a single transaction.  Second, the nature of the object transferred by such third person was never ascertained and identified as a narcotic since the customer was never apprehended.  In no instance has the State cited to any single authority in which a conviction was upheld either where based on an observation of a single transaction or where the nature of the object transferred was never determined.

Since the State did not prove defendant guilty beyond a reasonable doubt, this case must be reversed outright.  However, even if the State would have met its burden of proof and this case would not require an outright reversal, this case would still require a remand based on defendant's contention that he was denied effective assistance of counsel.  Defendant argues that his trial counsel provided ineffective assistance because counsel supplied evidence of an element necessary for conviction which the State did not supply.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  
Strickland v. Washington
, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984).  Defense counsel has "an overarching duty to advocate the defendant's cause" and "a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process."  
Strickland
, 466 U.S. at 688, 104 S. Ct. at 2065.  Under the supreme court's holding in 
Strickland
 there are "two components to any ineffective assistance claim: (1) deficient performance and (2) prejudice."  
Lockhart v. Fretwell
, 506 U.S. 364, 369, 113 S. Ct. 838, 842 (1993).  Specifically, a defendant must show that his "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  
People v. Albanese
, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984).  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  
Kimmelman v. Morrison
, 477 U.S. 365, 374, 106 S. Ct. 2574, 2582 (1986).  "[J]udicial scrutiny of counsel's performance is highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that *** the challenged action might be considered sound trial strategy."  
People v. Pecoraro
, 175 Ill. 2d 294, 319-20, 677 N.E.2d 875, 887-88 (1997).

In this case, the State failed to establish in its case-in-chief that Stidham took an object from the brown paper bag and gave it to the unknown person.  Defense counsel, however, elicited this fact on his cross-examination of the State's only witness and made repeated references to it:

"Q.  [Defense attorney] Stidham was five feet away from Jackson when Jackson turned and nodded and pointed at Stidham?

A.  [Officer Soto] Five to ten feet west of him, yes.

Q. After Jackson did that, that's when the individual walked from Jackson to Stidham?

A. Correct.

Q.  Did Stidham then pull out a brown paper bag?

A.  He had the brown paper bag in his hand.

Q.  When you were watching Stidham with a brown paper bag in his hand, could you see what was inside of it?

A.  No.

Q.  When Stidham removed something from the bag, could you tell what it was?

A.  No.

* * *

Q.  Officer, you say Stidham give something to this unknown individual.  Is that when you broke surveillance and went back to your car?

A.  Correct.

* * *

Q.  After Stidham gave an unknown object to this individual, did you see which direction the individual went?

A.  Could have been southbound on Komensky but I'm not sure.

Q.  You're just guessing?

A.  Yes

* * *

Q.  Do you know how long this individual remained at the scene after Stidham gave him an unknown object.

A.  He walk [sic] away."

Then on re-direct examination, the State finally delved into the issue of the object from the paper bag:

"Q. [Assistant State's Attorney] Did you actually see Jimmy Stidham reach into that brown paper bag and hand the item to the person that gave the money to Tommy Jackson?

A.  Yes."

Such re-direct was clearly invited by defense counsel's cross-examination.

Without proving the fact that Stidham reached into the bag and gave an object to the unknown person, the State simply did not have a case against defendant.  Since defendant was not in actual possession of the narcotics at issue, his constructive possession of them had to be established through the alleged transaction.  Without evidence that Stidham reached into the bag and gave an object to an unknown person, all that remains is a scenario where defendant received an unknown amount of money from an unknown person, who was then seen speaking to Stidham, who was later found to be in possession of narcotics.  This scenario in no way links defendant to the narcotics at issue.  Thus, without the cross-examination by defense counsel, this element of the State's case could not have been established.

We find that this scenario satisfies both parts of the 
Strickland
 test.  For defense counsel to elicit testimony which proves a critical element of the State's case where the State has not done so upsets the balance between defense and prosecution so that defendant's trial is rendered unfair.  Prejudice is established because without the evidence elicited by defense counsel, the court could not have found defendant guilty.

Nor do we find that the defense attorney's cross-examination of Officer Soto was a reasonable trial strategy.  While we are fully cognizant that the State is entitled to a presumption that defense counsel's actions were part of a valid trial strategy (
People v. Mejia
, 247 Ill. App. 3d 55, 65, 617 N.E.2d 799, 807 (1993) (strong presumption that defense counsel's actions were part of a valid trial strategy)), we can find no tactical reason to explain why a competent attorney would have so cross-examined Soto under these circumstances and the State has not offered any such reason (
Mejia
, 247 Ill. App. 3d at 65, 617 N.E.2d at 807 (counsel's actions not a valid trial strategy where court was "confident that no competent attorney would have defended his client in this manner")).  Defense counsel's questions about Stidham's brown paper bag elicited testimony establishing an element of the charged offense which the State had not proven.  We are unable to find any rational tactical or strategic purpose in the context of this defense to justify defense counsel's elicitation of this inculpatory evidence.

The State, however, claims that the following exchange from its own case-in-chief was sufficient without any assistance from defense counsel's cross-examination to establish the fact that Stidham reached into the paper bag and gave the unknown individual an object: 

"Q. [Assistant State's Attorney] Where did the person who had given Tommy Jackson the money go after he received the object?

A.  He left the area and walked off."

We disagree.

This question alone by the State does not on its face purport to establish that Stidham gave the unknown person an object from the paper bag.   It establishes at most that the unknown person received an object of unknown origin from an unknown person.  Moreover, to the extent that the colloquy in the State's case-in-chief alludes to the receipt of an object, undefined and unidentified as that object is, that point is made only in the question, not in the answer and therefore is a point made as unsworn "testimony" by the assistant State's Attorney and not in the sworn testimony of the witness.  With respect to the witness' response, the question is not addressed to the issue of the receipt of the object, but rather is an attempt to ascertain the actions of the unknown person after he completed his interaction with defendant.

Finally, the cases cited by the State are easily distinguishable.  In 
People v. Nunez
, 263 Ill. App. 3d 740, 749, 635 N.E.2d 718, 725-26 (1994), the defendant argued that his trial attorney was ineffective because he failed to subject the State's case to a meaningful cross-examination.  In the case 
sub judice
, defendant has not suggested that his counsel was ineffective for that reason.  Rather defendant has suggested that his attorney supplied otherwise missing testimony critical to the State's case. 

In 
People v. Stewart
, 104 Ill. 2d 463, 471, 473 N.E.2d 1227, 1240 (1984), the defendant argued that he was denied effective assistance of counsel because his attorney called to the stand the only witness who placed him at the scene of the crime.  Our supreme court disagreed, noting that calling the witness in question appeared to be a reasonable trial tactic because defense counsel erroneously believed that the witness had given contradictory descriptions of the man he had seen at the scene of the crime.  The 
Stewart
 court also found that the attorney's alleged error did not effect the results of the trial as the State presented a strong case against the defendant and his alibi was unimpressive.  

In the case at bar, there is no way to construe the attorney's error as reasonable trial tactics.  Before the cross-examination of Soto there was no evidence linking defendant to the narcotics and nothing in the record indicates that defense counsel had any reason to believe that Soto would have testified differently than he did.  Moreover, unlike in 
Stewart
, in this case counsel's error had an effect on the result of the trial.  
Stewart
 is thus inapposite.

If this case had been decided on appeal solely on grounds of ineffective assistance of counsel, only a remand would have been in order.  However, as we have also held that the State did not prove defendant guilty beyond a reasonable doubt, outright reversal is warranted.  The judgement of the circuit court of Cook County is therefore reversed and defendant's convictions are vacated.

Reversed; convictions vacated.

COUSINS and McBRIDE, JJ., concur.

FOOTNOTES
1:
Because we find for defendant on the issues of proof beyond a reasonable doubt and ineffective assistance of counsel, we need not reach the issues of inconsistent verdicts and the motion to suppress.

2:
On appeal defendant argues that he was actually only convicted on one count.  Because we reverse and vacate his conviction(s) on other grounds, we need not address that issue and we express no opinion on it.