THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAM COOPER, Defendant-Appellant.

First District (5th Division)   Nos. 1—01—1715, 1—01—2823 cons.

Opinion filed January 24, 2003.

QUINN, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Paula Borg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, the defendant, Sam Cooper, was found guilty of possession of a controlled substance with intent to deliver and was sentenced to serve six years' imprisonment. On appeal,[1] Cooper argues that he is entitled to a new trial as a result of: (1) the State's failure to show beyond a reasonable doubt that he knowingly possessed heroin with the intent to deliver, (2) ineffective assistance of counsel, (3) the trial court improperly admitting evidence of his prior drug-related convictions, and (4) the State making improper remarks during closing argument. For the reasons that follow, we affirm in part, reverse in part, and remand this matter for resentencing.

## BACKGROUND

At trial, Officer Cathlene McKenna testified that, on January 22, 2000, at approximately 7:45 p.m., she was conducting surveillance in an unmarked van. While there, she observed the defendant standing alone near a vacant lot, and on four separate occasions, she saw an individual approach the defendant and, after holding a short conversation, the individual handed the defendant currency. The defendant then walked a short distance to a fencepost, where he retrieved a small item or items from a clear plastic bag. He then gave the item or items to the individual, who then walked away. After the fourth transaction, Officer McKenna radioed her tactical team and described the defendant.

Officer Benjamin Almazan testified that on the day in question he

---

[1]Two notices of appeal were filed, one by the defendant's counsel and one by the defendant. Therefore, two files were created which were consolidated.

and Officer Ken Yakes were also members of Officer McKenna's tactical team. Officer Almazan testified that while he and Officer Yakes were waiting in a separate vehicle, they were radioed by Officer McKenna and told to approach the area where the defendant was located. When the officers arrived, they were told by Officer McKenna to detain Cooper. Officer Almazan testified that Officer McKenna then directed him to a fencepost, where he found at its base a clear plastic bag containing nine tinfoil packets. It was stipulated by the parties that if called to testify a forensic chemist would testify that the total estimated weight of the nine packets was 0.6 to 0.7 grams, and that one of the packets was tested and was shown to be positive for the presence of heroin.

Cooper testified that on the night in question, he walked to the store. As he was returning home, he ran into his friend, Jerry Winn. As the two men were walking together, Winn tried to sell the defendant a thermal suit. At this time, a yellow unmarked police car approached. Three officers in plainclothes exited the vehicle and detained the men.

Cooper testified that he recognized one of the police officers, Officer Amato. Cooper said that he recognized Officer Amato because he had been arrested by the officer in the past. Officer Amato then searched Cooper and asked him to sit in the backseat of the unmarked vehicle. Officer Amato informed Cooper that the police officers were looking for narcotics.

Officer Amato asked Cooper if he had a case with him in the past. Cooper replied "yes." Officer Amato asked about the case's result and Cooper responded by telling the officer that he had beat it. However, Cooper admitted that his response was not true because the case resulted in a conviction. Cooper testified that he lied because he believed Officer Amato was harassing him.

Winn was searched and told to go on his way. Cooper remained in the yellow vehicle for approximately 15 minutes, then was told to enter a blue vehicle that had pulled alongside the yellow vehicle. Cooper testified that the blue vehicle was occupied by Officers Almazan and Yakes. At this time, Cooper was informed that the police officers found drugs, and he was placed under arrest.

## ANALYSIS

### I

Cooper maintains the State failed to prove beyond a reasonable doubt that he knowingly possessed heroin with the intent to deliver. Cooper argues that his conviction must be reversed because the State failed to present evidence which showed beyond a reasonable doubt that he had the requisite knowledge, possession or intent to deliver.

■ "[T]he State carries the burden of proving beyond a reasonable doubt each element of the offense and the defendant's guilt." *People v. Maggette*, 195 Ill. 2d 336, 353 (2001), citing *People v. Ware*, 23 Ill. 2d 59, 62 (1961). "A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. When considering the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime." *Maggette*, 195 Ill. 2d at 353, citing *People v. Tye*, 141 Ill. 2d 1, 13-14 (1990); *People v. Phillips*, 127 Ill. 2d 499, 509-10 (1989).

■ To support a finding of possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the narcotics and that the narcotics were in his immediate and exclusive control. *People v. Smith*, 288 Ill. App. 3d 820, 823-24 (1997), citing *People v. Ray*, 232 Ill. App. 3d 459, 462 (1992). Constructive possession may be established by proof that the defendant knew the contraband was present and that it was in his immediate and exclusive control. *Smith*, 288 Ill. App. 3d at 824, citing *People v. Feazell*, 248 Ill. App. 3d 538, 545 (1993). Knowledge may be shown by evidence of conduct from which it may be inferred that the defendant knew the contraband existed in the place where it was found. *Smith*, 288 Ill. App. 3d at 824, citing *Feazell*, 248 Ill. App. 3d at 545. The elements of knowledge and possession are questions of fact that are rarely susceptible to direct proof. *Smith*, 288 Ill. App. 3d at 824, citing *Feazell*, 248 Ill. App. 3d at 545.

In *Smith*, two police officers who were in an unmarked vehicle were conducting surveillance. The officers were watching the defendant and his codefendant, who were standing in a vacant lot. The officers observed an individual approach the defendant, who then walked a short distance and retrieved something from the ground. The defendant then returned to the location where the individual was standing with the codefendant. The defendant handed an object to the codefendant, who handed it to the individual for cash. After the second transaction, the defendant and codefendant were arrested. When the officers investigated the area where the defendant retrieved something from the ground, they found a bottle cap which contained plastic bags of what was determined to be cocaine.

On appeal, the defendant argued that the State had failed to prove that he had knowledge and constructive possession of the cocaine. Considering the officers' observations, the *Smith* court held that the

defendant had knowledge and possession of the cocaine. *Smith*, 288 Ill. App. 3d at 824. The defendant in *Smith* did not challenge the sufficiency of the evidence with regard to his intent to deliver. *Smith*, 288 Ill. App. 3d at 824.

■ Here, Cooper allegedly possessed the heroin that was found near the fencepost. Like the defendant in *Smith*, Cooper was observed handing unidentified objects to individuals. Cooper recovered these objects from the clear plastic bag near the fencepost. During the period in which Officer McKenna watched Cooper, no other person went to the fencepost. When Officer Almazan recovered the plastic bag, he testified that there were no other items in the surrounding area. It was later determined that one of the objects in the clear plastic bag contained heroin. As such, like the defendant in *Smith*, Cooper knowingly possessed the heroin.

■ In a case involving unlawful possession with intent to deliver a controlled substance, "intent is a mental state seldom susceptible of direct proof but which must be inferred from circumstantial evidence." *People v. Neylon*, 327 Ill. App. 3d 300, 310 (2002). " 'This issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver. In controlled substances prosecutions, many different factors are probative of intent to deliver. Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption, the high purity of the drug confiscated, the possession of weapons, the possession of large amounts of cash, the possession of police scanners, beepers or cellular telephones, the possession of drug paraphernalia, and the manner in which the substance is packaged. [Citation.] The quantity of controlled substance alone can be sufficient to prove an intent to deliver. This is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption.' " *Neylon*, 327 Ill. App. 3d at 310, quoting *People v. Beverly*, 278 Ill. App. 3d 794, 799 (1996), and citing *People v. Robinson*, 167 Ill. 2d 397, 408 (1995).

■ Here, approximately 0.7 grams of suspected contraband were recovered from the clear plastic bag found near the fencepost.[2] This is an amount that reasonably could be viewed as intended for personal consumption. See *People v. Delgado*, 256 Ill. App. 3d 119, 122-23 (1993). When the amount of substance seized is an amount that may be considered consistent with personal use, our courts have properly required additional evidence of intent to deliver to support a conviction. *Robinson*, 167 Ill. 2d at 411. When the additional evidence in this

---

[2]Only one of the nine packets was tested and found to contain heroin.

case is considered, the State has failed to prove beyond a reasonable doubt that Cooper possessed the requisite intent to deliver the heroin.

Initially, we first observe that there are two rather recent decisions with factual situations similar to this matter where the respective courts determined that the evidence sufficiently showed that the defendant had the requisite intent to deliver.

The first decision is *People v. Little*, 322 Ill. App. 3d 607, 620 (2001). In *Little*, police officers were conducting surveillance, and on two separate occasions, the officers observed an unidentified person approach the defendant and hand him money. Each time, the defendant accepted the money, retrieved an object from another pocket, and handed the object to the individual, and the individual then walked away. The officer could not specifically identify the object that the defendant handed to the unknown individuals. After the defendant was detained and searched, he was found to be in possession of six separate small bags containing 1.5 grams of cocaine and a $10 bill. He was then ultimately arrested and taken to a police station.

Initially, the *Little* court reversed the trial court because the defendant was deprived of effective assistance of counsel as a result of his trial counsel's failure to pursue a pretrial motion to quash and suppress. *Little*, 322 Ill. App. 3d at 613-14. The *Little* court found that there was a question as to whether the arresting officers lacked the requisite probable cause to search and arrest the defendant. *Little*, 322 Ill. App. 3d at 613. As such, the court determined that the defendant received ineffective assistance when defense counsel failed to file a pretrial motion to quash and suppress.

The *Little* court then had to determine whether the evidence established that the defendant had the requisite intent to deliver the cocaine. The court held that evidence, when viewed in a light most favorable to the State, was sufficient to support the defendant's intent to deliver beyond a reasonable doubt. *Little*, 322 Ill. App. 3d at 619-20.

The *Little* court based its decision primarily on the observations of the police officers. The *Little* court stated:

> "The circumstances presented by the evidence here support a reasonable inference that the unknown objects passed by defendant to the two individuals were cocaine. Most notable is the fact that the objects exchanged were retrieved from the same part of defendant's clothing in which the packets of cocaine were recovered. We find a rational trier of fact could have drawn the reasonable inference that the objects retrieved and exchanged by defendant were cocaine packets." *Little*, 322 Ill. App. 3d at 618.

The second decision is *People v. Williams*, 331 Ill. App. 3d 662 (2002). In *Williams*, the court held that the evidence at trial suf-

ficiently supported the defendant's conviction of possession of more than a gram of cocaine with the intent to deliver within 1,000 feet of a public park. *Williams*, 331 Ill. App. 3d at 668, citing *People v. Jackson*, 318 Ill. App. 3d 321, 325-26 (2000). There, the arresting officer testified that "he watched four separate transactions in which defendant took something from persons who walked up to him. Each time defendant then removed an object from a bag and handed it to the person who gave him money." *Williams*, 331 Ill. App. 3d at 668. The remaining items in the bag were determined to contain cocaine.

We disagree with the holdings in these cases because where the police surveillance *fails to describe the object that is allegedly "sold"* and the defendant is found only in possession of a very small amount of contraband and very little money, we cannot rely on circumstantial evidence to fill in the blanks. In *People v. Jones*, 174 Ill. 2d 427 (1996), the defendant was arrested for the possession of five packets containing a white rocky substance that police believed to be cocaine. The contents of two of the packets tested positive for cocaine; however, the remaining three packets were not tested. The two tested packets weighed only .59 grams together, while the combined weight of all five packets was 1.4 grams. The defendant was convicted of possession with intent to deliver 1.4 grams of cocaine.

The *Jones* court held that the defendant could only be convicted of possession with intent to deliver .59 grams of cocaine because the other three packets had not been identified as cocaine and no inference could be drawn that the three packets contained cocaine based on the mere fact that the other two packets did. The court reasoned that while "it is not difficult to speculate, as did the trial judge, that the remaining three packets may have contained cocaine, such a finding must be based on evidence and not upon guess, speculation or conjecture." *Jones*, 174 Ill. 2d at 429-30.

Here, when Cooper was arrested, none of the alleged four buyers was arrested as well. As such, the State is asking this court to assume or to speculate that the items which Cooper handed to the individuals contained heroin. Taking the *Jones* decision into consideration, we do not believe it proper to speculate that Cooper gave the four alleged buyers heroin, when it is possible that the four items that he handed to the individuals were innocuous.

This was not a case where the defendant was found with a large quantity of drugs. In this matter, the amount of drugs recovered was a small amount that reasonably could be viewed to be intended for personal consumption. Consequently, *Robinson* has instructed us to look at additional factors to determine whether a defendant possessed the requisite intent to deliver. We are to consider if the defendant was

in possession of weapons, large amounts of cash, beepers, cellular phones or drug paraphernalia at the time of the arrest, and also the purity of the drug and the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408.

When we take these additional facts into consideration, the evidence does not strongly suggest that Cooper had an intent to deliver. When Cooper was arrested he did not posses any weapons, nor did he have a large amount of money, he did not possess a police scanner, beeper, cellular phone or any drug paraphernalia. The alleged heroin was packaged in nine tinfoil packages (only one of which was tested). However, if Cooper had purchased the heroin for his own personal use, it may have been packaged in that manner at the time he purchased it. See *People v. Scott*, 256 Ill. App. 3d 844, 851-52 (1993).

Officer McKenna could not state specifically that Cooper handed the four alleged buyers heroin or that she saw him hand over tinfoil packages. The only thing that Officer McKenna could testify to was that Cooper handed the individuals an item. Here, the State wants this court to assume that the four items that Cooper handed out to the four unknown individuals were heroin. Yet, it is possible that the items which Cooper handed out were innocuous. Because neither of the individuals was stopped, we do not know what Cooper handed to them. If only one of the unknown individuals had been stopped, we would not have to guess, speculate or conjecture on whether the defendant had in fact delivered the subject heroin.

Cooper was found to be in possession of an amount of heroin that could be used for personal consumption. When the additional factors delineated in *Robinson* are considered, they also do not strongly evidence an intent to deliver. As such, when the holding in *Jones* is taken into consideration, we refuse to assume that the untested items, including those allegedly sold to four unknown buyers, were heroin, and as such, we hold that the State failed to prove intent to deliver beyond a reasonable doubt. We hold, however, that the State did prove beyond a reasonable doubt that Cooper was guilty of possession of the one tinfoil package that tested positive for the presence of heroin.

## II

Cooper maintains that he is entitled to a new trial as a result of ineffective assistance of counsel. Specifically, Cooper contends he was denied effective assistance of counsel when his defense attorney cross-examined Officers McKenna and Almazan, and Cooper also avers that he was denied effective assistance when his attorney did not formally subpoena alibi witness Jerry Winn.

■ We review claims of ineffective assistance of counsel under the

two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984), which our supreme court recognized in *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). To determine whether there has been a violation of the defendant's sixth amendment right to effective assistance of counsel, the defendant must show: (1) that his counsel's "representation fell below an objective standard of reasonableness"; and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Shatner*, 174 Ill. 2d 133, 144 (1996); *People v. Consago*, 170 Ill. App. 3d 982, 987 (1988). "If an ineffective-assistance claim can be disposed of on the ground that defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance under the deficiency prong." *People v. Pacheco*, 281 Ill. App. 3d 179, 183 (1996), citing *People v. Eddmonds*, 143 Ill. 2d 501, 512 (1991).

### A. Cross-examination of Officers McKenna and Almazan

Cooper argues that he was denied effective assistance of counsel when his defense attorney cross-examined Officer McKenna and Officer Almazan. Cooper complains that during the officers' direct examinations, neither officer was questioned about an identification that Officer McKenna made of the defendant at the police station following his arrest. Yet, during their respective cross-examinations, defense counsel questioned each officer about McKenna's in-station identification of Cooper. Cooper maintains he was prejudiced by the officers' testimony because it had the effect of bolstering the State's case.

### B. Failure of Jerry Winn to Appear as a Witness

Cooper maintains he was also deprived of effective assistance of counsel because his trial counsel did not secure the appearance of alibi witness Winn. Defense counsel entrusted Cooper with a subpoena to serve on Winn. However, Cooper failed to serve the subpoena on Winn. When asked why he did not give the subpoena to Winn when Cooper saw Winn before the start of trial, Cooper testified that he forgot the subpoena and left it at home. Cooper maintains that Winn's failure to appear at trial and provide an alibi was prejudicial. Cooper argues that his defense counsel's failure to subpoena Winn constituted ineffective assistance.

We find that Cooper is unable to satisfy the second prong of *Strickland* and subsequently has failed to show that he was denied effective assistance of counsel. Cooper cannot show that he was

prejudiced because the evidence was not closely balanced. Officer Mc-Kenna, who was a credible witness, testified that on four occasions she saw Cooper retrieve an item from a clear plastic bag and then place the clear plastic bag near the base of a fencepost. Officer McKenna did not see any other individual near the plastic bag during the time that she observed the defendant. After Cooper was arrested, Officer Almazan credibly testified that no other objects were found near the plastic bag. And, it was stipulated that one of the nine tinfoil packets tested positive for the presence of heroin. Cooper has failed to show that but for his counsel's unprofessional errors the result of the proceeding would have been different. As such, Cooper has failed to show that he suffered prejudice.

## III

Cooper contends that the trial court improperly admitted evidence of his prior drug-related convictions.

■ Whether evidence of a prior conviction may be introduced as impeachment is a question that lies within the sound discretion of the trial court. *People v. Williams*, 173 Ill. 2d 48, 81 (1996). The State may not introduce evidence of a defendant's prior convictions only to show his propensity to commit crimes. *People v. Robinson*, 299 Ill. App. 3d 426, 440 (1998).

Under the rule developed in *People v. Montgomery*, 47 Ill. 2d 510 (1971), evidence of a witness's prior conviction is admissible to attack the witness's credibility where: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment, (2) less than 10 years have elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later, and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999), citing *Montgomery*, 47 Ill. 2d at 516; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 609.2 (6th ed. 1994).

■ This last factor requires the trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice. *Atkinson*, 186 Ill. 2d at 456.

In conducting this balancing test, the trial judge should consider, *inter alia*, the nature of the prior conviction, its recency and similarity to the present charge, other circumstances surrounding the prior conviction, and the length of the witness's criminal record. *Atkinson*, 186 Ill. 2d at 456, citing *Montgomery*, 47 Ill. 2d at 518; see also 6 L. Pieczynski, Illinois Practice § 22.68 (West 1989); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 609.4 (6th ed. 1994). If the

trial judge determines that the prejudice substantially outweighs the probative value of admitting the evidence, then the evidence of the prior conviction must be excluded. *Atkinson*, 186 Ill. 2d at 456.

Cooper argues the trial court erred because it failed to adequately consider and balance the factors listed in *Montgomery*. In particular, Cooper maintains that the trial court erred because it only considered the recency of his prior convictions.

The trial court's explanation regarding its decision to admit Cooper's prior convictions follows:

"Okay. With regard to the case at hand, *People v. Montgomery*, initially I would state the convictions do fall within the ten[-]year period. They are felony convictions. In fact, they are quite recent in time to the time the defendant will be testifying.

It is my opinion that whenever any witness testifies, including a defendant, his credibility is always a subject matter of comment. Due to the recentness of the convictions, I do find that the probative value that those convictions have with regard to the defendant's credibility far outweigh any prejudicial effect that would occur.

I believe my ruling is also supported by the fact there will be a limiting instruction given to the jury [that] they should only consider those convictions as they affect the defendant's credibility, not to be considered as substantive evidence."

In support of his position, Cooper relies on *People v. Williams*, 159 Ill. App. 3d 612 (1987). In *Williams* the trial record did not indicate whether the trial court weighed the *Montgomery* factors. As far as weighing the appropriate factors, the trial record indicated that the trial court only stated that, " 'I think it's not that prejudicial.' " *Williams*, 159 Ill. App. 3d at 623. The *Williams* court refused to assume that the trial court considered all of the appropriate factors, stating that "[i]n this regard, the record must indicate that the court actually applied the balancing test." *Williams*, 159 Ill. App. 3d at 622-23, citing *People v. Ellison*, 123 Ill. App. 3d 615, 631 (1984). The court subsequently found that the trial court committed error and reversed. *Williams*, 159 Ill. App. 3d at 622-23.

■ Here, unlike in *Williams*, the trial court weighed the appropriate factors delineated in *Montgomery*. Before it weighed the appropriate factors, the trial court acknowledged the *Montgomery* decision. The trial court then weighed the factors. It found that Cooper's prior convictions were felonies, that they fell within the requisite 10-year period, and that the convictions' probative value outweighed any possible prejudicial effect due to their recency. As such, we do not find that the trial court abused its discretion.

## IV

■ Cooper contends that he is entitled to a new trial as a result

of improper remarks made by the prosecution during the State's closing argument. However, Cooper failed to object to the State's remarks at trial and also failed to raise the issue in his posttrial motion for a new trial. As such, this issue is waived. Additionally, any alleged error does not amount to plain error because the evidence against defendant, as discussed earlier, was not closely balanced. *People v. Herrero*, 324 Ill. App. 3d 876, 886 (2001).

## CONCLUSION

For the foregoing reasons, we find that the State failed to prove beyond a reasonable doubt that Cooper possessed the requisite intent to deliver the heroin. The defendant's conviction must be vacated. This matter is remanded, however, so that Cooper can be resentenced for the lesser included offense of possession of a controlled substance. As such, the decision of the trial court is affirmed in part and reversed in part and this cause is remanded for resentencing.

Affirmed in part and reversed in part; cause remanded.

CAMPBELL, P.J., concurs.

JUSTICE QUINN, dissenting:

I dissent. The majority have accurately set forth the standard of review and then refused to follow it. That standard is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Under this standard of review, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses. *People v. Thomas*, 178 Ill. 2d 215, 232 (1997). It is the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000).

The majority rely on the holding in *People v. Smith*, 288 Ill. App. 3d 820 (1997), in correctly holding that the defendant knowingly possessed the heroin recovered in the plastic bag. The majority comment that "[t]he defendant in *Smith* did not challenge the sufficiency of the evidence with regard to his intent to deliver." 337 Ill. App. 3d at 111. While this statement is true, both the majority and the dissent addressed the sufficiency of the evidence as to the defendant's intent to deliver. In *Smith*, the police testified that they observed the defendant

on two occasions retrieve something from the ground and then hand something to his codefendant. In turn, the codefendant handed those two unknown objects to individuals who gave money to the codefendant. As here, the two apparent "buyers" were not stopped by the police. The police recovered seven packets from a wine bottle cap. The packets were found to contain a total of 1.13 grams of cocaine. The police recovered $80 from the codefendant. *People v. Smith*, 288 Ill. App. 3d at 822. The dissenting justice said there was "a reasonable doubt that defendant or [codefendant] ever received cash in exchange for packets of narcotics." *People v. Smith*, 288 Ill. App. 3d at 827 (McNulty, J., dissenting). The majority addressed the dissent and found that the evidence was not so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Smith*, 288 Ill. App. 3d at 824. Clearly, the holding in *Smith* supports affirming the verdict in the instant case. Indeed, the fact that Cooper was seen making hand-to-hand deliveries to four individuals and money was recovered from his person demonstrates that the evidence in the instant case was much stronger than that in *Smith*.

The majority rely on the holdings in *People v. Neylon*, 327 Ill. App. 3d 300 (2002), and *People v. Robinson*, 167 Ill. 2d 397 (1995), for the proposition that "[i]n a case involving unlawful possession with intent to deliver a controlled substance, 'intent is a mental state seldom susceptible of direct proof but which must be inferred from circumstantial evidence.' *People v. Neylon*, 327 Ill. App. 3d 300, 310 (2002)," also citing *People v. Robinson*, 167 Ill. 2d at 408. 337 Ill. App. 3d at 111. In *Neylon*, police were given consent to search a home after they responded to a call of "shots fired." In the home, inside a dresser drawer, the police recovered a plastic bag containing 12.8 grams of cocaine in one bag and cannabis in two other bags. There was absolutely no evidence that the defendant was seen selling drugs.

Consequently, the State's prosecution of defendant for possession with intent to deliver relied entirely upon circumstantial evidence. Similarly, in *Robinson*, the police had received several anonymous phone calls complaining of drug sales at an apartment building. The police then observed approximately a dozen people coming in and out of the doorway to that building over a 20-minute time period. The police went to defendant's apartment and knocked on the door, identifying themselves as police. The defendant was observed throwing a bag outside a side window. That bag contained 36 packets of cocaine and 4 packets of PCP. Again, as in *Neylon*, there was no evidence that the defendant was seen selling narcotics. The supreme court recited the above evidence and held "the appellate court erroneously reversed the defendant's conviction for possession with intent to

deliver. Forty individual parcels, containing two different types of narcotics, and the other circumstantial evidence in this case were sufficient to support the jury's verdict [of guilty of possession of a controlled substance with intent to deliver]." *People v. Robinson*, 167 Ill. 2d at 414.

In the instant case, the defendant's intent to deliver narcotics was proven by direct proof. Consequently, cases discussing factors to consider when there is only circumstantial evidence to prove intent are inapposite. The factors that support a circumstantial case of intent to deliver will almost never be present in cases involving the sale of narcotics in the numerous open-air drug markets set up on the streets of Chicago. The trial courts adjudicate thousands of these cases every year and this court reviews hundreds of these cases. The doses are sold in very small packages, often weighing less than one-tenth of a gram; if the sellers possess more than one gram of narcotics, they are subject to being convicted of a Class 1 felony (720 ILCS 570/401(c)(2) (West 2000)); the purity of the drugs is usually very poor; the seller has no need to possess a large amount of money; the sellers do not usually possess guns, as to do so would subject them to armed violence charges (720 ILCS 5/33A—2, 33A—3 (West 2000)); there is no reason for the sellers to possess drug paraphernalia such as scales; and the sellers sell to pedestrians and people in autos, so there is no need to use cell phones or beepers. If the defendant had sold an undercover police officer a package containing a small amount of narcotics, none of the above factors would be present. This does not mean that the absence of the above factors would support an inference that the defendant was not guilty of delivering the narcotics or not guilty of possessing with intent to deliver any narcotics found on his person after making the sale.

The majority criticize the holdings of this court in *People v. Williams*, 331 Ill. App. 3d 662 (2002), and *People v. Little*, 322 Ill. App. 3d 607 (2001), where this court found evidence that was almost identical to that in the instant case to be sufficient to support a verdict of guilty for possession with intent to deliver. The majority disagree with these holdings because "where the police surveillance *fails to describe the object that is allegedly 'sold'* and the defendant is found only in possession of a very small amount of contraband and very little money, we cannot rely on circumstantial evidence to fill in the blanks." (Emphasis in original.) 337 Ill. App. 3d at 113. Of course, this reasoning is flawed in that there was *direct* evidence of drug sales in *Williams* and *Little*, just as in this case.

I think it is interesting that the majority cite our supreme court's holding in *People v. Jones*, 174 Ill. 2d 427 (1996), for the majority's as-

sertion that it is mere speculation "that Cooper gave the four alleged buyers heroin, when it is possible that the four items that he handed to the individuals were innocuous." 337 Ill. App. 3d at 113. This is exactly the reasoning used by one of the divisions of this court in *People v. Jackson*, 318 Ill. App. 3d 321 (2000), but the majority do not cite *Jackson*. Perhaps this failure can be explained by the *Jackson* court's explanation that, in that case, the defendant's conviction was based on the observation of a single transaction. The court said it might have reached a different conclusion had the State introduced evidence that "more than a single customer approached [the] defendant, gave him money and received an object from [the third person] after a nod by defendant in his direction." *People v. Jackson*, 318 Ill. App. 3d at 325. Of course, in the instant case, the police saw Cooper make *four* hand-to-hand deliveries to individuals for which he received money. Therefore, the holding in *Jackson* supports affirmance in this case.

The court in *Little* discussed the holding in *Jackson* and concluded: "While a theoretical possibility exists that 'there was something innocuous' in defendant's clothing that was handed to the two individuals, we do not believe that possibility precluded the trier of fact in this case from drawing an inference which is reasonably supported by the totality of the circumstances." *People v. Little*, 322 Ill. App. 3d at 618.

In rejecting the well-reasoned holding in *Little*, the majority strongly rely on the fact that the police were unable to describe the object that was sold to the four customers who were not arrested. This assertion does not withstand scrutiny. Does the majority hold that if the police testified that the defendant handed the customers small plastic bags or small tinfoil packets, this would be sufficient evidence to affirm the defendant's conviction? If so, why? The bags or foil packets could contain "something innocuous." Under the majority's rationale, no conviction for possession of a controlled substance with intent to deliver based on the scenario present in the instant case could ever stand, unless the customers were arrested and narcotics recovered from their person. Such a requirement is not only contrary to common sense and Illinois law, it could lead to greatly increasing the number of arrests of narcotics users. What benefit could possibly be gained by such a course of action?

Finally, whether Cooper sold the customers narcotics or something "innocuous" is really irrelevant. Cooper, like the defendants in *Little*, *Smith*, *Williams* and *Jackson*, was charged with possession of a controlled substance with intent to deliver. He was not charged with delivery of a controlled substance. As long as Cooper possessed the nine packets of drugs (which the majority have held that he did) with

the intent to sell any of those nine packets, Cooper was guilty of possession with intent to deliver.

For the foregoing reasons, I would affirm the conviction of the defendant.