No. 2--02--0423

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) 

v.                                  )      No. 01--CF--3382

)

ERNESTO D. BANUELOS, ) Honorable

) Victoria A. Rossetti,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

Defendant, Ernesto D. Banuelos, appeals from his conviction of disorderly conduct (720 ILCS 5/26--1(a)(3) (West 2002)) after a trial without a jury in the circuit court of Lake County.  For the reasons that follow, we affirm.

                                                           FACTS

On the morning of October 10, 2001, Dr. Roudell Kirkwood, principal of North Chicago Community High School, was interrupted by a staff member who informed him that a message containing a threat to blow up the school came through the school's computer network.  The computer message read as follows:

"terrorist going to blow ncch wright [
sic
] now boom in 15 seconds."

Apparently, "ncch" is an acronym for North Chicago Community High School.  

Dr. Kirkwood  immediately ordered his technical staff to determine which computer generated the threat.  At the same time, the fire department was dispatched to bring bomb-sniffing dogs and conduct a search of the school. Only a perimeter search was done because, in Dr. Kirkwood's judgment, no further search was necessary because the 15 seconds had passed with no explosion. Likewise, he felt it was unnecessary to evacuate the 850 students.  No bomb was found.  The message was a hoax.  Two computers in a school classroom were identified as the sources of the threat.  The teacher in that classroom quickly named defendant and Brian Bautista as the students who occupied those computers.  Defendant confessed that Bautista broke into the computer network, to which students did not have access, and that defendant typed the message.  Each of the terminals in the network would have received the threat.  

The State charged defendant and Bautista with disorderly conduct. The section under which they were charged reads:

"(a) A person commits disorderly conduct when he knowingly:

              * * *

(3) Transmits or causes to be transmitted in any manner to another a false alarm to the effect that a bomb or other explosive of any nature *** is concealed in such a place that its explosion or release would endanger human life, knowing at the time of such transmission that there is no reasonable ground for believing that such bomb *** is concealed in such place ***. " 720 ILCS 5/26--1(a)(3) (West 2002).  

Defendant and Bautista were convicted after a bench trial.   Defendant was sentenced to 24 months' probation and 100 hours of community service work.  He filed a timely appeal.

                                                    DISCUSSION

Defendant contends that he was not proved guilty beyond a reasonable doubt in that the State "failed to prove the element of concealment."  The State carries the burden of proving beyond a reasonable doubt each element of the charge against the defendant.  
People v. Cooper
, 337 Ill. App. 3d 106, 110 (2003).  The relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime.  
Cooper
, 337 Ill. App. 3d at 110.  Here, the sufficiency of the evidence issue involves construing the disorderly conduct statute, which is an issue of law that we review 
de
 
novo
.  
People v. Harrell
, 342 Ill. App. 3d 904, 908 (2003).

In denying defendant's motion for a directed finding at the close of the State's case in chief, the trial court observed:

"[I]t's an issue of first impression ***.  I have to look at the fact that this was a high school.  That in a high school are students, not terrorists.  And that 'going to blow North Chicago right now, boom, in 15 seconds' -- that the reasonable inference from that is that there is a bomb in North Chicago High School, and that it was going to blow in 15 seconds."

Defendant elected not to present a defense, and the trial court found him guilty of the offense charged.  Defendant contends that the trial court disregarded the two places in the statute where the legislature used the phrase "is concealed in such a place."  Defendant claims that by ignoring the statute's concealment requirement the trial court improperly convicted him of disorderly conduct.   Defining "conceal" as "to put out of sight," "to hide," or "to keep secret," defendant argues that, because the State presented no evidence that the message indicated that a bomb was out of sight or hidden, an element of the offense was not proved.

Defendant likens this case to 
In re M. F.
, 315 Ill. App. 3d 641 (2000).  That case involved the interpretation of the obstructing justice statute (720 ILCS 5/31--4(a) (West 1998)).  The minor respondent was charged with obstructing justice in that, with intent to obstruct his own prosecution, he knowingly concealed evidence.  
In re M. F.
, 315 Ill. App. 3d at 642.  The evidence showed that the respondent threw baggies containing contraband off a rooftop to the street,  where a police officer was shining a flashlight on the respondent and was able to recover the baggies from the ground with no difficulty.  
In re M. F.
, 315 Ill. App. 3d at 643-44.  The appellate court held that the respondent was not proved guilty beyond a reasonable doubt because he did not attempt to destroy the evidence or make its recovery less likely.  
In re M. F.
, 315 Ill. App. 3d at 650.  Defendant cites this case for the proposition that the State was required to prove that concealment was part of the alarm message.

The State responds that concealment need not mean that the object is affirmatively hidden; it may also mean that its location is not known or easily ascertained.  The State argues that the message that the school would blow up in 15 seconds allowed for the inference that the explosive was present in or near the school in an undisclosed, therefore concealed, location.  The State cites 
People v. Manning
, 334 Ill. App. 3d 882 (2002), where the defendant was found guilty of child abduction where the evidence showed he intended to hide the child and keep her from her mother's observation.  
Manning
, 334 Ill. App. 3d at 888.  
Manning
 defined the word "conceal" to mean " '[t]o hide or keep from observation, discovery, or understanding; keep secret.' "  
Manning
, 334 Ill. App. 3d at 888, quoting American Heritage Dictionary 304 (1985).  The State asserts that, because the alarm message did not tell the school authorities where the bomb could be found, the bomb could not have been readily found or discovered and was, hence, concealed.           

When interpreting a statute, a court's primary goal is to ascertain and give effect to the intent of the legislature, and the best evidence of that intent is the statutory language.  
People v. Youngerman
, 342 Ill. App. 3d 518, 524 (2003).  In connection with the disorderly conduct statute at issue, the legislature does not define the word "concealed."  Therefore, our primary task is to give that word its plain, ordinary meaning.  
Youngerman
, 342 Ill. App. 3d at 524.  

We conclude that the false alarm transmitted by defendant falls within the conduct prohibited by the statute.  We note that the statute provides that a person commits disorderly conduct when he knowingly "transmits *** in any manner *** a false alarm 
to the effect that
 a bomb or other explosive device of any nature *** is concealed."  (Emphasis added.)  720 ILCS 5/26--1(a)(3) (West 2002).   The focus of the legislation is the 
effect
 the conduct has on others, rather than the conduct itself.    Any words employed in conveying a false alarm that raise in others the belief that a device is concealed are sufficient to bring the communication within the prohibition of the statute. To the recipient of a bomb threat, if the whereabouts of the explosive device are unknown, it is concealed.    One reliable way to assess the effect of a message is to consider the reaction it provokes.  The logical reaction of a person who thinks something is concealed is to search for it.  Our conclusion that the threat in the instant case falls within the purview of section 26--1(a)(3) is supported by the reaction it triggered.  Here, a search, together with a request for bomb-sniffing dogs, was  conducted in an attempt to uncover the explosive device.  Clearly, the false alarm transmitted by defendant caused Dr. Kirkwood and other school authorities to believe that the device was concealed or else the search would not have been deemed necessary. 

The dictionary can be used as a resource to determine the ordinary and commonly accepted meaning of words.  
Melliere v. Luhr Bros., Inc.
, 302 Ill. App. 3d 794, 797 (1999).  The dictionary's definition of "conceal" supports our reasoning. One of the meanings Webster's Third New International Dictionary assigns to "conceal" is to "refrain from revealing."  Webster's Third New International Dictionary 469 (1993).  The legislature used the adjective form of "conceal," that being "concealed."  The adjective form of "refrain from revealing" is "unrevealed."  It follows, therefore, that one way an explosive device can be concealed is that its location is unrevealed.  There is no dispute that, under the evidence presented in this case, the location of the explosive device contemplated by the threat in the instant case was unrevealed.  

  For the foregoing reasons, we conclude that the State proved each element of the offense, and we affirm defendant's conviction of disorderly conduct.

Affirmed.

O'MALLEY, P. J., and GROMETER, J., concur.